1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

MICHAEL NELSON,

10

Plaintiff,

11

v.

12

CANON USA, INC., a New York
Corporation, and John Does I-V,

13

Defendants.

14

C07-503Z

ORDER

15

16

17

18

19

20

THIS MATTER came before the Court on motion of defendant Canon USA, Inc.
("Canon") for summary judgment on all of plaintiff's claims, as well as on all of Canon's
counterclaims, _see_ docket no. 26.  Having reviewed all papers filed in support of and in
opposition to Canon's motion, and having previously issued a Minute Order ruling on said
motion, _see_ docket no. 45, the Court hereby enters the following explanatory order.

**Background**

21

22

23

24

25

26

Plaintiff Michael Nelson is the sole proprietor of Capital Films, a television and
commercial production company.  Nelson Dep. at 39:11-15, 45:12-25, Exh. A to Marchese
Decl. (docket no. 26-2) [hereinafter "Nelson Dep."].  From March 1992 through February
1998, Capital Films was located at 6351 Seaview Avenue NW in Seattle.  Exh. A to Bender
Decl. (docket no. 26-3); Nelson Dep. at 41:14-22.  In 2003, Capital Films began advertising
high-definition ("HD") capabilities.  Nelson Dep. at 55:11-13, 22-25.  Shortly thereafter,

ORDER  1–

1  plaintiff met Tom Bender, Assistant Director of Canon's Broadcast and Communications

2  Division, at a trade show held in the Washington State Convention Center.  Bender Decl. at

3  ¶¶ 2 & 4; Nelson Dep. at 56:1-3.  During the course of this meeting, plaintiff gave

4  Mr. Bender a business card on which only the defunct Seaview Avenue address appears.

5  Bender Decl. at ¶ 4 & Exh. A.

6        Sometime after the meeting, in October 2003, Canon agreed to loan plaintiff, on a

7  demonstration basis for 30 days, a high-definition lens (model HJ15X8BWRS) valued at

8  $23,000.  Bender Decl. at ¶ 5; Statement at 2, Exh. J to Bender Decl.; Nelson Dep. at 80:14-

9  15, 86:11-87:2, 90:3-8, 92:18-20.  The demonstration loan was handled by VMI, Inc., a

10 dealer of Canon products.  Bender Decl. at ¶ 5.  According to plaintiff, Larry Sharpe of VMI,

11 Inc. personally delivered the lens to plaintiff at plaintiff's home located on Ashworth Avenue

12 North in Seattle.  Nelson Dep. at 80:9-15, 83:3-5.  In contrast, Mr. Bender has indicated that

13 plaintiff picked up the lens from VMI, Inc.  Bender Decl. at ¶ 6.  The parties agree, however,

14  that, when plaintiff acquired the lens, he signed a packing list, thereby acknowledging

15 receipt of the lens on a "DEMO LOAN" basis.  Exh. C to Bender Decl.; Nelson Dep. at

16 86:11-87:2.

17        The 30-day demonstration period passed and plaintiff neither paid for the lens nor

18 returned it to Canon or VMI, Inc.  Nelson Dep. at 99:2-3.  In May 2004, Mr. Bender issued

19 on behalf of Canon an invoice for the lens, showing the previously agreed discounted price

20 of $14,500; the invoice was mailed to the Seaview Avenue address, as well as to a post

21 office box for Capital Films.  Bender Decl. at ¶ 8 & Exh. D.  Plaintiff received the invoice,

22 but did not pay the amount due.  Nelson Dep. at 99:2-3, 106:21-107:22.  Canon took other

23 steps to collect the outstanding balance, but without success.  Bender Decl. at ¶¶ 9-12.

24        In May 2006, Mr. Bender learned from a photographer based in Hawaii that plaintiff

25 was attempting to sell the lens on eBay.  Bender Decl. at ¶ 13 & Exh. G.  Canon contacted

26 the Seattle Police Department, which arranged a "sting" operation during which plaintiff met

ORDER  2–

an undercover detective posing as "Scott Miller" at the Starbucks in the University Village and exchanged the lens and a camera for a Bank of America cashier's check made payable to Michael Nelson in the amount of $30,000.  Bender Decl. at ¶ 14; Exhs. C & E to Marchese Decl.; Nelson Dep. at 131:22-25, 132:3-4, 133:2-10, 134:15-22.  Plaintiff was arrested and spent two days in jail.  Amended Complaint at ¶ 3.10 (docket no. 34).  The King County Prosecuting Attorney's Office apparently declined to file criminal charges.  _See_ Motion for Summary Judgment at 8 (docket no. 26).

In March 2007, plaintiff filed a complaint in King County Superior Court against Canon, alleging defamation, intentional infliction of emotional distress, outrage, intentional interference with business expectancy, malicious harassment, malicious prosecution, and violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq.  Exh. A to Notice of Removal (docket no. 1).  Plaintiff was subsequently granted leave to amend his complaint to dismiss the Fair Debt Collection Act claim, and his related motion to remand this matter to state court was denied.  Minute Order (docket no. 24); Minute Order (docket no. 35).  Canon asserted counterclaims for conversion, fraud, violation of the CPA, breach of contract, goods sold and delivered, and unjust enrichment, _see_ Answer (docket no. 8), and subsequently moved for summary judgment in its favor on all claims and counterclaims.

**Discussion**

**A.    Summary Judgment Standard**

The Court must grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  _Celotex Corp. v. Catrett_, 477 U.S. 317, 323 (1986).  A fact is material if it might affect the outcome of the suit under the governing law.  _Anderson v. Liberty Lobby, Inc._, 477 U.S. 242, 248 (1986).  In support of its motion for summary judgment, the moving party need not negate the opponent's claim, _Celotex_, 477 U.S. at 323; rather, the moving

ORDER   3–

1  party will be entitled to judgment if the evidence is not sufficient for a jury to return a verdict

2  in favor of the opponent, *Anderson*, 477 U.S. at 249.

3       When a properly supported motion for summary judgment has been presented, the

4  adverse party "may not rest upon the mere allegations or denials" of its pleadings.  Fed. R.

5  Civ. P. 56(e).  The non-moving party must set forth "specific facts" demonstrating the

6  existence of a genuine issue for trial.  *Id.*; *Anderson*, 477 U.S. at 256.  A party cannot create

7  a genuine issue of fact by simply contradicting his or her own previous sworn statement,

8  *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999), or by asserting "some

9  metaphysical doubt" as to the material facts, *Matsushita Elec. Indus. Co. v. Zenith Radio*

10  *Corp.*, 475 U.S. 574, 586 (1986).  Likewise, discrediting the testimony proffered by the

11  moving party will not usually constitute a sufficient response to a motion for summary

12  judgment.  *Anderson*, 477 U.S. at 256-57.

13       To survive a motion for summary judgment, the adverse party must present

14  affirmative evidence, which "is to be believed" and from which all "justifiable inferences"

15  are to be favorably drawn.  *Id.* at 255, 257.  When the record, however, taken as a whole,

16  could not lead a rational trier of fact to find for the non-moving party, summary judgment is

17  warranted.  *See* *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006); *see*

18  *also* *Beard v. Banks*, 126 S. Ct. 2572, 2578 (2006) ("Rule 56(c) 'mandates the entry of

19  summary judgment, after adequate time for discovery and upon motion, against a party who

20  fails to make a showing sufficient to establish the existence of an element essential to that

21  party's case, and on which that party will bear the burden of proof at trial.'" (quoting

22  *Celotex*, 477 U.S. at 322)).

23  **B.    Plaintiff's Claims**

24       With regard to his claims for intentional infliction of emotional distress and malicious

25  harassment, plaintiff provided no response to Canon's motion for summary judgment, and

26  the Court inferred therefrom that plaintiff conceded those claims lack merit.  *See* Local Rule

ORDER   4–

CR 7(b)(2).  In addition, the Court has concluded that, as a matter of law, Canon is entitled to judgment on those claims.  Intentional infliction of emotional distress constitutes the same tort as outrage, which is separately alleged, _Kloepfel v. Bokor_, 149 Wn.2d 192, 193 n.1, 66 P.3d 630 (2003), and plaintiff has not provided any evidence that Canon's actions were based on plaintiff's race, gender, or other immutable characteristic, which is an element of malicious harassment, _see_ RCW 9A.36.083; RCW 9A.36.080.  Thus, the Court has DISMISSED with prejudice plaintiff's second (intentional infliction of emotional distress) and fifth (malicious harassment) causes of action.

As to his claim of outrage, plaintiff offered no support.  To prove outrage, plaintiff must show (i) extreme and outrageous conduct; (ii) intentional or reckless infliction of emotional distress; and (iii) actual result to plaintiff of severe emotional distress.  _Kloepfel_, 149 Wn.2d at 195.  The tort of outrage must be predicated on behavior "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." _Id._ at 196 (quoting _Grimsby v. Samson_, 85 Wn.2d 52, 59, 530 P.2d 291 (1975)).  Here, even making every reasonable inference in favor of plaintiff, Canon's activities do not, as a matter of law, rise to the requisite level of atrociousness and intolerability.  For Canon to seek police assistance in retrieving its lens after over two and a half years of nonpayment by plaintiff is simply not the type of conduct sought to be discouraged via the tort of outrage.  Thus, the Court has DISMISSED with prejudice plaintiff's third cause of action.

With respect to his defamation claim, plaintiff has not provided any evidence that Canon made false statements.[1]  Rather, plaintiff merely described information Mr. Bender

---

[1] Although plaintiff referred to a string of e-mail messages, plaintiff did not provide such correspondence to the Court.  Plaintiff's counsel apparently intended to attach certain documents to his declaration, but no exhibits were actually filed with the Court.  Plaintiff received notice of this inadvertent omission when Canon filed its reply brief on January 11, 2008, _see_ Reply at 4 n.2 (docket no. 40), but he has done nothing since that time to correct the oversight.

ORDER   5–

1   allegedly "avoided telling the Seattle Police Department."  Response at 10 (docket no. 37).

2   Thus, the Court has construed plaintiff's first cause of action as asserting only "defamation

3   by omission."  To establish a prima facie case, plaintiff must demonstrate _inter alia_ that the

4   communication at issue "left a false impression that would be contradicted by the inclusion

5   of omitted facts."  _See_ _Mohr v. Grant_, 153 Wn.2d 812, 827, 108 P.3d 768 (2005).  "Merely

6   omitting facts favorable to the plaintiff or facts that the plaintiff thinks should have been

7   included does not make a publication false and subject to defamation liability."  _Id._

8       Here, plaintiff has complained that Mr. Bender did not tell police about a "sale

9   agreement" and about the invoice issued in May 2004.  Canon has replied that, in preparing

10  the Certification for Determination of Probable Cause ("PC Certification"), Seattle police

11  were aware of the demonstration loan and the subsequent invoice.  Although the

12  PC Certification expressly refers to the packing list, sales order worksheet, and invoice,

13  neither Mr. Bender's nor Detective Renihan's statements discuss such items, and all of the

14  police-generated documents were drafted after plaintiff was arrested on May 31, 2006.  _See_

15  Marchese Decl. at Exh. C (PC Certification dated June 23, 2006) & Exh. D (Renihan

16  Statement dated June 7, 2006); Bender Decl. at Exh. J (Bender Statement dated June 8,

17  2006).  Thus, the Court has concluded that genuine issues of material fact exist concerning

18  whether Canon engaged in actionable omissions, and the Court has DENIED Canon's

19  motion for summary judgment concerning plaintiff's first cause of action.

20      For similar reasons, the Court has also DENIED Canon's motion for summary

21  judgment with regard to plaintiff's fourth (interference with business expectancy) and sixth

22  (malicious prosecution) causes of action.  To prove tortious interference with a contractual

23  relationship or business expectancy, plaintiff must show (i) the existence of a valid

24  contractual relationship or business expectancy; (ii) Canon's knowledge of that relationship

25  or expectancy; (iii) an intentional interference inducing or causing a breach or termination of

26  the relationship or expectancy; (iv) an improper purpose or use of an improper means for the

1   interference; and (v) resultant damage.  *See* *Leingang v. Pierce County Med. Bureau, Inc.*,

2   131 Wn.2d 133, 157, 930 P.2d 288 (1997).  Here, plaintiff contends that Canon interfered

3   with his potential sale of equipment to Mick Kalber, a photographer based in Hawaii, the

4   proceeds of which he could have used to pay debts owed to Canon and others.  Canon argues

5   that plaintiff had no legal right to sell the lens without first paying for it.  Canon, however,

6   has cited no legal authority to support this contention.  Therefore, the Court has concluded

7   that genuine issues of material fact exist as to, among other things, whether plaintiff had a

8   valid expectancy and whether Canon's interference had an improper purpose or used an

9   improper means.

10          To establish malicious prosecution, plaintiff must demonstrate (i) Canon instituted or

11  continued the prosecution at issue; (ii) the institution or continuation of the prosecution

12  lacked probable cause; (iii) the proceedings were instituted or continued through malice; (iv)

13  the proceedings terminated on the merits in favor of plaintiff or were abandoned; and (v)

14  plaintiff suffered injury or damage as a result of the prosecution.  *See* *Peasley v. Puget Sound*

15  *Tug & Barge Co.*, 13 Wn.2d 485, 497, 125 P.2d 681 (1942).  A claim of malicious

16  prosecution may be premised upon a wrongful arrest, as opposed to the filing of criminal

17  charges.  *See* *State v. Chenoweth*, 160 Wn.2d 454, 468 n.13, 158 P.3d 595 (2007).  Canon

18  asserts that plaintiff is required to show Canon knew plaintiff's arrest was not supported by

19  probable cause.  Such knowledge, however, is not an element of the claim, but rather would

20  be evidence of malice.

21          Canon has also cited to the statute defining the crime of "theft of rental, leased, lease-

22  purchased, or loan property," as support for its contention that probable cause existed to

23  arrest plaintiff.  The statute, however, requires proof of a written loan agreement and either

24  direct proof of intent or indirect proof, which can take the form of receipt by the borrower of

25  notice to return the property or presentation by the borrower of false or inaccurate

26  identification at the time of the loan.  RCW 9A.56.096.  Here, the only memorialization of

ORDER  7–

the agreement between Canon and plaintiff is the packing list bearing plaintiff's signature; however, neither the term of the loan nor the return date are stated on that document.  Exh. C to Bender Decl.  The Sales Order Worksheet associated with the transaction contains a due date of November 28, 2003, but it does not appear to have plaintiff's signature or initials.  *Id.* Moreover, although Canon sent an invoice and a past due letter to plaintiff, Exhs. D & E to Bender Decl., at the time of plaintiff's arrest, Canon had no indication that plaintiff received either document, and neither document demanded return of the lens.  Finally, a dispute exists concerning what contact information plaintiff provided or was otherwise available to Canon. Thus, the Court has concluded that genuine issues of material fact exist concerning, among other things, whether plaintiff's arrest was supported by probable cause and whether Canon acted out of malice.

As a final matter, Canon argues that it is entitled to summary judgment on all of plaintiff's claims because plaintiff has presented no evidence of damages.  Although the Court has discounted plaintiff's allegation that he lost his rights to vote, run for office, and bear arms, which are not consequences of mere arrest, but rather of conviction, the Court has concluded that plaintiff has sufficiently raised genuine issues of fact concerning damages. Canon does not dispute that plaintiff spent two days in jail, which alone is a compensable injury, and plaintiff alleges the loss of sale proceeds, injury to reputation, and emotional distress.  Therefore, the Court has DENIED Canon's motion for summary judgment to the extent it was based on lack of damage.

## C.   Canon's Counterclaims

Canon's counterclaims for conversion, fraud, breach of contract, goods sold and delivered, and unjust enrichment arise from the same nucleus of facts and constitute alternative theories of liability.  For reasons similar to those stated earlier, the Court has concluded that, with one exception, namely the CPA counterclaim, genuine issues of material fact preclude summary judgment in favor of either party on Canon's various

1   counterclaims.  The Court will assess at a later date how best to instruct the jury to avoid

2   double recovery on Canon's part.

3          With regard to Canon's counterclaim under the CPA, the Court has concluded that

4   Canon has failed to present a prima facie case.  To establish a violation of the CPA, a private

5   plaintiff must prove (i) the defendant engaged in an unfair or deceptive act or practice; (ii)

6   such act or practice occurred within a trade or business; (iii) such act or practice affected the

7   public interest; (iv) the plaintiff suffered an injury to his or her business or property; and

8   (v) a causal relationship exists between the defendant's act or practice and the plaintiff's

9   injury.  _Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co._, 105 Wn.2d 778, 785-

10  93, 719 P.2d 531 (1986).  The dispute at issue here concerns no more than an alleged breach

11  of a private agreement, which does not affect the public interest.  Canon has offered no

12  evidence that others have been or will be injured in exactly the same fashion.  _See_ _Sloan v._

13  _Thompson_, 128 Wn. App. 776, 792, 115 P.3d 1009 (2005) ("[I]t is the likelihood that

14  additional plaintiffs have been or will be injured in exactly the same fashion that changes the

15  factual pattern from a private dispute to one that affects the public interest." (quoting

16  _Hangman Ridge_, 105 Wn.2d at 790)).  Thus, the Court has sua sponte GRANTED partial

17  summary judgment in favor of plaintiff on Canon's CPA counterclaim and DISMISSED the

18  counterclaim outlined in ¶¶ 3.26 - 3.30 of Canon's Answer.

19  **Conclusion**

20         For the foregoing reasons, the Court has GRANTED partial summary judgment in

21  favor of Canon and DISMISSED with prejudice plaintiff's second, third, and fifth causes of

22  action.  In all other respects, the Court has DENIED Canon's motion for summary judgment.

23  The Court has also sua sponte GRANTED partial summary judgment in favor of plaintiff and

24  has DISMISSED with prejudice Canon's counterclaim brought under Washington's

25  Consumer Protection Act.

26

1   IT IS SO ORDERED.

2   DATED this 12th day of February, 2008.

3

4   _____

5   Thomas S. Zilly
    United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER   10–